## JENKINS v. PLANTERS' & MECHANICS' BANK.

No. 1693.    Opinion Filed September 17, 1912.

(126 Pac. 757.)

1.    **BILLS AND NOTES**—Rights of Purchaser—Notice of Infirmities.
Where the purchaser of a promissory note nas notice of its in-
firmities at the time of the purchase, he takes same subject to
such defenses as may be maintained by reason of such infirmities.

When a negotiable instrument bears on its face such marks
of infirmity as would put an ordinarily prudent person upon in-
quiry, the indorsee of such instrument takes same subject to
such defenses as are maintainable by reason of its infirmities.

The agent of a principal, the trustee of a cestui que trust,
or the officer of a corporation, is not permitted to divert to his
own use the funds of his principal without authority to do so;
and one who receives from an officer of a corporation the notes
or securities of such corporation, in payment of, or as security
for, a personal debt of such officer, does so at his peril, and in
such case the rule is not relaxed by reason of the degree of confi-
dence reposed in the officer by the purchaser.

2.    **SAME**—Action on Note—Parties Defendant.    In an action on a
promissory note payable to a corporation, where the defense is
fraud, failure of consideration, and nondelivery, and the president
of such corporation is charged with personal responsibility for
all the infirmities of such note, and the note is indorsed in blank
by the corporation through its president, and pledged by such
president to secure his own individual debt, it is error to refuse
to allow such president to be made a party defendant.

(Syllabus by Harrison, C.)

*Error from Oklahoma County Court;*
*Sam Hooker, Judge.*

This was an action by the Planters' & Mechanics' Bank
against J. S. Jenkins on a promissory note of $100 executed by
J. S. Jenkins and made payable to the Post Publishing Company
and transferred to plaintiff by Wm. P. Harper, president of said
Post Publishing Company, as collateral security on an individual
debt.    Defendant interposed the defense of fraud and misrepre-
sentation in procuring the note, also failure of consideration and
nondelivery of the note, and alleged that same was unlawfully
taken from his possession without his knowledge or consent,

and asked that Harper be made a party defendant. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Thorp & Thorp,* for plaintiff in error.

*J. H. Wright* and *Wm. P. Harper,* for defendant in error.

Opinion by HARRISON, C. The decisive question involved in the case is whether or not the note on its face was sufficient to put the bank on inquiry as to its validity. The note, with the indorsements, is as follows:

"Oklahoma City, Okla., April 20th, 1907. $100.00. Twelve months after date, for value received, I promise to pay to the order of the Post Publishing Co., at its office at Oklahoma City, Okla., the sum of one hundred dollars with interest from date, at the rate of ten per cent. per annum, payable annually. J. S. Jenkins." Indorsed: "The Post Publishing Co. by Wm. P. Harper, President, J. E. Jenkens, Sec'y."

The testimony of defendant was that Wm. P. Harper, president of the company, came to his office, represented the company to be in a solvent condition and on a paying basis, and proposed to issue $100 of stock to defendant, and take defendant's note payable in twelve months; that, upon Harper's promise to furnish a financial statement satisfactorily showing the solvent condition of the company, he filled out and signed the note, but withheld delivery of same pending the furnishing of the financial statement, and delivery of stock to him; that the statement was never furnished, nor the stock issued or delivered; that within a few months the company was declared a bankrupt; that the note was never delivered, but in some way, without defendant's knowledge or consent, Harper unlawfully got possession of same and transferred it to plaintiff bank as collateral security for Harper's individual debt. Harper denied making the alleged misrepresentations, and denied taking the note without defendant's knowledge, and testified that defendant delivered the note to him. However, the statement of defendant that the stock was never issued and that he received no consideration is unchallenged. Nor was there any evidence as to whether the bank had further notice of the note's infirmities than such notice as was disclosed by the note itself, and the fact that Harper was pledging the company's

funds to secure his own debt. The question, then, is whether this would put the bank on inquiry.

Joyce on Defenses to Commercial Paper, sec. 474, says:

"If the instrument itself contains matters sufficient, within the rules governing the question of notice or knowledge, to necessitate inquiry on the part of the taker, his failure to make such inquiry will prevent him from claiming the protection and rights of a *bona fide* holder."

In section 485, the same author, commenting on the decision in *Orr v. South Amboy Terra Cotta Co.,* 113 App. Div. 103, 98 N. Y. Supp. 1026, says:

"This decision reversed and remanded a case in which it was declared that a note or other obligation given by a corporation to an officer is not necessarily void on that account. It may be perfectly lawful and valid. But, as it is out of the usual course of business for a corporation to issue its obligations to its officers, the fact that an obligation is so made suggests that it may be irregular, and consequently a third person taking such an obligation, and knowing that the payee is an officer of the maker corporation, is put upon his inquiry as to whether or not the obligation has been lawfully issued. There is no reason why this rule should not apply as well to directors as to any other officer. When the note or obligation shows upon its face that it is made to an officer, the note itself conveys the notice to all persons into whose hands it may come. When, as in this case, it is made to a person without designation indicating that he is an officer, the transferee may or may not know the fact from other sources. If he does know it, as the appellants did in this case, he is put upon his inquiry; and, if it afterwards turns out that the obligation was subject to legal infirmity at its inception, he cannot avoid the effect of the infirmity by claiming to be a *bona fide* holder without notice."

In 2 Thompson on Corporations (2d Ed.) sec. 1700, under the subject "Individual interest of officer as notice of lack of power," it is said:

"On the plainest principle of ordinary business honesty, a party to a transaction in which an officer or agent of the corporation uses the corporate credit, funds, or property to satisfy a personal obligation is by that fact alone—a 'suspicious circumstance' within the meaning of the preceding section—put on inquiry as to the officer's authority to make the contract, and acts at his peril, where he fails to take adequate measures to ascertain

the extent of the officer's power in the matter. It is against the general law of reason that an agent should be intrusted with power to act for his principal and for himself at the same time. 'The reason for the rule is that to permit such a thing would allow an agent to place his private interest in antagonism to his duty to the principal, in which case, for men cannot always resist temptation, duty might fall. The law will not permit agents, or those acting in a trust relation, to subject themselves to such temptation, and, to prevent it, avoids such contracts, unless the principal or *cestui que trust* choose to abide by them.' The authorities unite in holding the act *prima facie* unlawful; and unless actually authorized the person dealing with the corporation will be deemed to have acted in the light of knowledge of all the rights of the corporation that he could have obtained by ·making the proper inquiries. And there is authority that a judgment on such an instrument is no better than the instrument itself. In such.a case the holder of the judgment has the burden of proof as to the validity of both note and judgment. The mere naming of the officer of the corporation who executes a note ostensibly in its behalf, as the individual payee therein, says one court, is a danger signal, and such note 'bears its death wound on its face.'"

In *Garrard v. P. & C. R. Co.,* 29 Pa. 154, which was an action by the company to recover certain bonds which had been made payable to the railroad company and assigned by the president of such company as collateral security for an individual debt, the question was raised as to whether the purchaser of the bonds was charged with notice of the power of the president of the railroad company to assign such bonds for his own benefit. In deciding this question, the court says:

"A party receiving from the president of a railroad company a bond given to the company with an assignment in blank upon it by such president, which purports to have been done by him as president by order of the board of directors, as collateral security for an antecedent debt due by such president individually, is not such *bona fide* holder for value, without notice, as can hold the bond against the company."

The same question was decided in *Wilson v. M. E. R. Co.,* 120 N. Y. 145, 24 N. E. 384, 17 Am. St. Rep. 625, upon which question Justice Parker, who delivered the. opinion, says:

"Undoubtedly the general rule is that one who receives from an officer of a corporation the notes or securities of such corporation in payment of, or as security for, a personal debt of such offi-

cer, does so at his own peril. *Prima facie* the act is unlawful, and, unless actually authorized, the purchaser will be deemed to have taken them with notice of the rights of the corporation" —citing *Garrard v. P. & C. R. Co.,* 29 Pa. 154; *Pendleton v. Fay,* 2 Paige (N. Y.) 202; *Shaw v. Spencer,* 100 Mass. 388, 97 Am. Dec. 107, 1 Am. Rep. 115.

The two foregoing cases, with numerous others from both state and federal courts, are cited by Thompson in support of the rule above quoted. We deem it unnecessary to extend the list of authorities on this question. They are in harmony on the proposition that, where the purchaser of a promissory note has notice of its infirmities at the time of the purchase, he takes same subject to such defenses as may be maintained by reason of such infirmities. And it is equally well settled that, when a negotiable instrument bears on its face such marks of infirmity as would put an ordinarily prudent person on inquiry, the indorsee of such instrument takes same subject to such defenses as are maintainable by reason of its infirmities, and, under the authorities above cited, which follow the greater weight of authority, "one who receives from an officer of a corporation the notes or securities of such corporation, in payment of, or as security for, a personal debt of such officer, does so at his own peril." The reasons for this rule are well stated in the authorities above cited. The agent of a principal, the trustee of a *cestui que trust,* or the officer of a corporation is not permitted to divert to his own use the funds of his principal without authority to do so, and one who purchases such funds without evidence of such authority does so at his peril. The note in question herein comes squarely within the rule above cited. It is indorsed in blank by the corporation, and the officer who puts the corporate indorsement thereon transfers the note as collateral security for the payment of his individual debt. This, without authority from the corporation to do so, is against the policy of the law. Nor is the rule relaxed by reason of the degree of confidence which may have been reposed in the officer.

"If the dealer with the officer has such confidence in the officer that he is willing to trust him without inquiry under suspicious circumstances of a substantial character, he must stand

the loss. It may be said generally that a person who deals with the agents of a corporation and accepts their assertion of authority, while having ground to believe that they have none, takes the risk which would attend the failure of authority." (2 Thompson on Corporations [2d Ed.] sec. 1699; *Rochester & C. Turnpike Road Co. v. Paviour,* 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790; *Wall Street Bldg. Ass'n v. N. Y. Oil Co.* [Sup.] 109 N. Y. Supp. 18.)

It is also contended· that the court erred in denying defendant's prayer to make Wm. P. Harper a party defendant. This contention is also well taken. All the transactions in question had been brought about at Harper's suggestion and through his influence. He had full knowledge of the entire matter. He had pledged this note as collateral security for his own debt. He could have been held personally liable to the bank, and the defendant's prayer to make him a party defendant should have been granted.

For the reasons given, the judgment should be reversed, and the cause remanded.

By the Court: It is so ordered.