## KEISEL v. BALDOCK et al.

No. 6337.   Opinion Filed December 21, 1915.

Rehearing Denied February 15, 1916.

(154 Pac. 1194.)

1.  **BILLS AND NOTES—Purchaser with Notice of Infirmities—Defenses.** Where the purchaser of a promissory note has notice of its infirmities at the time of the purchase, he takes the same subject to such defense as may be maintained by reason of such infirmities.

    When a negotiable instrument bears on its face such marks of infirmity as would put an ordinary prudent person upon inquiry, the indorsee of such instrument takes the same subject to such defenses as are maintainable by reason of its infirmities.

2.  **SAME—Special Indorsement—Effect as Notice—Liability of Purchaser.** The holder of three negotiable promissory notes for $2.500 each purchased property of S. for $6,000. and transferred these notes in payment, but retained an interest in one of the notes to the extent of the excess of the notes above the purchase price of the property, and in transferring one of the notes the special indorsement was preceded by the following memorandum: "Oklahoma City. November 16, 1910. On payment of the within note and interest Mrs. N. E. Baldock is to receive $1,530.00 and interest at 6 per cent." And these notes were transferred to K. prior to maturity and for value, and the amount of the notes and interest was collected by K. **Held,** that the above memorandum in effect destroyed the negotiability of the note, and it was sufficient to put the purchaser upon inquiry as to Mrs. Baldock's interest therein, and such purchaser was not a holder in due course, and was liable to Mrs. Baldock for the amount of her interest therein in an action for money had and received.

(Syllabus by Galbraith. C.)

*Error from District Court, Oklahoma County;*
*W. R. Taylor, Judge.*

Action by Nancy E. Baldock against Harry C. Keisel and others. Judgment for plaintiff, and the defendant named brings error. Affirmed.

*Everest & Campbell,* for plaintiff in error.

*Burwell, Crockett & Johnson,* for defendant in error Baldock.

Opinion by GALBRAITH, C. Nancy E. Baldock commenced this action in the trial court against the plaintiff in error and defendants in error Floyd H. Skirvin and W. B. Skirvin for money had and received. A jury was waived, and the cause was tried to the court, and a finding made in favor of the plaintiff, and judgment rendered for the amount claimed against the plaintiff in error. From that judgment an appeal has been prosecuted to this court by petition in error and case-made.

It appears from the record that the defendant in error, Mrs. Baldock, was the owner of three promissory notes for $2,500 each, and secured by real estate mortgage; that she purchased some property from Floyd H. Skirvin for $6,000, and gave in payment thereof these mortgage notes, after having indorsed the same; that the aggregate amount of the notes was in excess of the purchase price of the property in the sum of $1,530; that Mrs. Baldock retained an interest in one of the notes for this amount; and that Skirvin also executed his promissory note to her for this amount, and on the back of one of the notes transferred to him was written this indorsement:

"Oklahoma City, November 16, 1910. On payment of within note and interest Mrs. Nancy E. Baldock is to receive $1,530.00 and interest from date at 6 per cent. Pay to F. H. Skirvin or order. N. E. Baldock."

Payment of the note was also guaranted by W. B. Skirvin by written indorsement on the back thereof.

Prior to maturity, and for value, Skirvin transferred and indorsed the notes to the plaintiff in error, Keisel, and Keisel collected the notes at maturity, and claims to have been a *bona fide* holder of the notes, and that, since he acquired them prior to maturity and for value, he took them free from all equities or claims of Mrs. Baldock.

Oral testimony was admitted at the trial, over the objection of the plaintiff in error, to the effect that it was understood between Skirvin and Mrs. Baldock at the time the notes were transferred to Skirvin that he should hold this note in which Mrs. Baldock claimed an interest, and that the same was to be placed in the bank and held until its maturity, and, when collected, the $1,530, and interest, should be paid to Mrs. Baldock. The full amount of this note and interest was collected by Keisel, and this action was to recover the interest claimed in it by Mrs. Baldock to the extent of $1,530, and interest at 6 per cent. Keisel's testimony as to how he purchased the notes is as follows:

"Q. Did you agree with Floyd H. Skirvin to purchase the notes? A. I did. Q. Did you have them in your hands? A. He came out to the house. I was in bed. I took a couple of the notes; presumed they were all right; just looked at them; saw that they were $2,500 each, you know. I took up a couple of them; did not look them over. I did not see that indorsement on it. Q. You did not see the indorsement on there? A. No, sir. Q. What did you do then? A. I gave him a check and put the notes in my safe. I gave him the check. He said make it out to W. B. Skirvin. I made the note payable to W. B. Skirvin, or check, rather."

After Keisel discovered the memorandum on the note in regard to the 'interest of Mrs. Baldock therein, he went to W. B. Skirvin and had the payment guaranteed. Skirvin made a written guaranty on the back of the note as follows:

"On account of indorsement| in favor |of Mrs. Baldock I guarantee the full payment of $2,500.00 and interest on this note to H. C. Keisel, or order. W. B. Skirvin."

The assignments of error as set out in the brief of plaintiff in error are as follows:

"The assignments of error may be all discussed under two headings: First, it was error for the trial court to admit evidence of the oral agreement and conversations between Mrs. Baldock and her attorney and the Skirvins at the time the note was delivered by Mrs. Baldock to Floyd H. Skirvin, on November 16, 1910; second, the transaction between Mrs. Baldock and Floyd H. Skirvin conferred absolute authority upon the latter to sell and dispose of the note barring the so-called restrictive and conditional indorsement, and under the undisputed evidence Keisel by the purchase of said note from Floyd H. Skirvin became the absolute owner thereof, and of all the proceeds thereof, and of the debt evidenced by said note, and the judgment of the trial court should have been in his favor on this account."

The oral testimony as to the understanding of Mrs. Baldock and Skirvin as to what should be done with the note at the time the same was transferred to Skirvin was not competent or relevant as to the plaintiff in error, Keisel, and he was not bound thereby, provided he was a holder of the note in due course. However, this testimony was competent and relevant to show the interest that Mrs. Baldock retained in this note, and

the title that Floyd H. Skirvin had to the same, since, if there was an infirmity in his title, and the note bore evidence of this infirmity, the same was passed to Keisel, and he was not a holder in due course. The fact that Keisel purchased the note for value and before maturity did not make him a holder in due course, if at the time he purchased the note he had notice of any infirmity in the instrument or defect in the title of Skirvin thereto. Therefore the question is presented whether or not the indorsement on the back of the note relative to the interest of Mrs. Baldock therein was sufficient notice to place Keisel upon inquiry as to the character of title that Skirvin had, and to charge him with notice of the infirmity in Skirvin's title, and, in effect, to destroy the negotiability of the note and to make it subject to all the defenses in his hands that it would have been in the hands of Floyd H. Skirvin. Section 4102, Rev. Laws 1910, defines a "holder in due course" as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions: First: That it is complete and regular upon its face; second, that he became the holder of its before it was overdue, and without notice that it had been previously dishonored, if such was the fact; third, that he took it in good faith and for value; fourth, that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

If Skirvin transferred the note to Keisel "in breach of faith," as provided in section 4105, Rev. Laws 1910, with Mrs. Baldock, Keisel's title to the note was defective and he was not a holder in due course. The general rule, as announced by this court in *Jenkins v.*

*Planters' & Merchants' Bank,* 34 Okla. 607, 126 Pac. 757, in the first paragrah of the syllabus, is as follows:

"Where the purchaser of a promissory note has notice of its infirmities at the time of the purchase, he takes same subject to such defenses as may be maintained by reason of such infirmities. When a negotiable instrument bears on its face such marks of infirmity as would put an ordinarily prudent person upon inquiry, the indorsee of such instrument takes same subject to such defenses as are maintainable· by reason of its infirmities."·

The note involved in that case was payable to a corporation. It was indorsed by the president of the corporation, and placed as collateral security to the bank to secure his individual debt. There was no evidence that the bank taking this note as collateral had any further notice of the note's infirmities than such as was disclosed by the note to the effect that Harper was· pledging the company's note to secure his debt. The court held that that was sufficient notice to place the bank upon inquiry, and that it should have ascertained whether or not Harper had authority from the company to use this note as collateral for his own obligation, and, as it did not make that inquiry, it was not a holder in due course, and the same was subject to the same defenses in an action by the bank as it would have been in the hands of the corporation.

In the case of *Stein v. Rhenstrom,* 47 Minn. 476, 50 N. W. 827, the instrument involved was negotiable in form, a warehouse receipt for whisky, and contained the following phrase, "and deliver the same upon payment for the whisky, the United States government and state tax, interest and charges." The court, in discussing the question, said:

"Whether these words should be regarded as , equivalent to the words 'upon payment for the whisky' or 'upon payment of the purchase price of the whisky,' or as equivalent to some other form of expressing the fact that a payment of some part of the price had to be made, is wholly immaterial for the proper disposition of the order appealed from, which must be affirmed. Strictly speaking, the receipts were not negotiable, for they carried upon their face a notice that the whisky would only be surrendered upon the payment of certain charges thereafter to be ascertained. If there was anything doubtful or ambiguous about the language used as to the nature, character, or extent of the claim or lien, a purchaser was put upon his guard and cautioned to inquire. He was thereby notified of an infirmity which would affect him, and this notice was ample to prevent a purchase of the receipts by any person exercising ordinary business prudence and judgment without first investigating. Observing a clause in the receipts which was uncertain, he was bound to learn its meaning, or, failing so to do, to suffer the consequences. The words in question were indefinite, and of doubtful import, but palpably a prepayment of some character was required, in addition to United States government and state taxes, interest and charges. It devolved upon the plaintiff, when purchasing, to discover what was intended by their use. The purchaser of what purports to be or is said to be negotiable paper must exercise ordinary prudence in respect to knowledge derived from an inspection of the paper. *Hall v. Hale,* 8 Conn. 336; *Ayer v. Hutchins,* 4 Mass. 370 (3 Am. Dec. 232) ; see, also, *Bank v. Scott Co.,* 14 Minn. 77 (Gil. 59) (100 Am. Dec. 194)."

This case is in line with the great weight of authority, as will be seen by reference to *Mee v. Carlson,* 22 S. D. 365, 117 N. W. 1033, 29 L. R. A. (N. S.) 351, and the very full note accompanying said report.

We conclude from these authorities that the indorsement on the note in regard to the interest of Mrs. Baldock therein was sufficient to put a reasonably prudent man upon inquiry, and the inquiry would have disclosed the defect in Skirvin's title, and the fact that Keisel bought the note without actual knowledge of this indorsement cannot affect the question; for he is charged with knowledge of this indorsement and everything it necessarily implied. It was certainly notice of the defect in Skirvin's title,' and was sufficient to put Keisel on inquiry to find out the interest of Mrs. Baldock, if any, in the note. The fact that he did not see or look for the indorsement before purchasing the note cannot excuse him. The fact that when he did discover this indorsement he carried the note to W. B. Skirvin and secured his guaranty of the payment is significant, at least, to show that the memorandum on the back of the note was sufficient to give notice that Mrs. Baldock had some interest in the note, and that there was a defect in his title. Keisel having taken this note with the knowledge of the infirmity in Skirvin's title, he was not a holder in due course, and the same was subject to the same defenses in his hands that it would have been in the hands of Floyd H. Skirvin, and, he having collected the full amount of the note and interest, he is liable to Mrs. Baldock for money had and received, to the extent of her interest as found by the trial court.

We therefore recommend that the judgment appealed from be affirmed.

By the Court: **It is so ordered.**