(26 App. Div. 615.)

### MARSHALL v. DE CORDOVA et al.

(Supreme Court, Appellate Division, First Department. March 11, 1898.)

1. SUIT BY EXECUTOR—RECOVERY OF ASSETS.

Where, in a suit by an executor against a third person to recover moneys belonging to the estate, it is established that the money was received by the defendant under circumstances imputing notice to him of its origin, the burden is upon the defendant to show that such payments had been made as absolved him from accounting to the estate for its property which he has wrongfully received.

2. SAME—DEMAND.
    Where the receipt by a third party of money belonging to an estate is
    wrongful ab initio, no demand is necessary to the maintenance of a suit to
    recover it, either at law or in equity.

3. TRUST FUNDS—MISAPPROPRIATION—NOTICE.
    A temporary administrator opened a speculative account with defendants,
    who were stockbrokers, and deposited with them a check drawn on a bank
    deposit of funds of the estate, and signed by him as "trustee." Thereafter
    they drew their check for the amount to his order as trustee, which, after
    his indorsement thereof, was credited to him individually on their books. In
    an action by the executor, who thereafter qualified, to recover this sum from
    the brokers, with its increase, *held*, that they had been put on inquiry as to
    the money being a trust fund.

4. TRIAL BY JURY—ACCOUNTING.
    *Held*, further, that the plaintiff had a right to an accounting in respect to
    the money, and that, therefore, the cause of action was of an equitable na-
    ture, and the defendants had no right to a trial by jury.

5. SAME—APPLICATION.
    After a case has been opened at special term, and a motion to dismiss the
    complaint has been denied, it is too late to demand a trial by jury.

6. RIGHT OF ACTION—LACHES.
    As long as an action is brought within the period allowed by the statute
    of limitations, the right to maintain the same is not lost by mere lapse of
    time.

Appeal from special term.

Action by Stella A. Marshall, as executrix, against Alfred De Cor-
dova, and others.    From a judgment for plaintiff, defendants appeal.
Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, Mc-
LAUGHLIN, and INGRAHAM, JJ.

Thomas G. Shearman, for appellants.
Samuel Greenbaum, for respondent.

VAN BRUNT, P. J.    This action was brought by the executrix
of the will of Sarah Drake, or Merle, to recover $5,000 and interest,
which it was claimed one Robert P. Noah, temporary administrator
of Mrs. Drake's estate, had misappropriated, and which the defend-
ants had received with notice that it was a trust fund, improperly ap-
plied.    Noah had been appointed temporary administrator of the above
estate, and had received some $10,500 in cash, which he had deposited
in bank.    Out of this money, on the 10th of October, 1881, Noah, in
his name as trustee, opened a speculative account with the firm of
Alfred De Cordova & Co., who were stockbrokers doing business in
this city.    Upon that day he deposited with said firm a check for
$5,000, drawn by him as trustee upon the Merchants' Exchange Na-
tional Bank to the order of the firm.    On the 11th of October the de-
fendants bought for account of Robert P. Noah, trustee, 500 shares of
New York Elevated Railroad Company stock at a cost of $54,962.50,
and on the 17th or 18th of October sold the same, realizing the sum
of $55,437.50; making a profit upon the account of $417.55, after de-
ducting interest and commissions.    About the same time there were
purchased for his account 500 shares of the Denver & Rio Grande
stock, costing about $43,000.    A day or two after this purchase Mr.
De Cordova asked Mr. Noah for some explanation in respect to this

account, and he testifies that Noah told him that "the money was his own; that he wanted to make some trades, and wanted to enter it as trustee only upon one ground so that it could not be touched in any way by little indebtednesses that he owed around." It further appears that upon the same day a check was drawn for the amount to the credit of Noah, as trustee, by the defendants, upon the Bank of the State of New York, which was indorsed by Noah as trustee; and, according to his own testimony, he did not get the money upon the check, but the proceeds were placed with the defendants to his individual credit. Noah's speculation in the Denver & Rio Grande stock subsequently proved disastrous, and he was sold out, and all the money was lost. The will of the said Sarah Drake having been duly admitted to probate, and the plaintiff having qualified as sole executrix, this action was brought some six years afterwards. Upon the trial of the action, at the opening of the case, it was urged that the complaint did not state a cause of action, and should be dismissed, among other grounds stated, for the reason that there was no allegation that Noah had failed to account for the money which he had received. This objection is not well taken. It having been established that the money deposited with the defendants by Noah belonged to the estate of which he was a temporary administrator, under · circumstances which imputed notice to the defendants of the origin of the money, when the estate claims its own money which had been received wrongfully by the defendants, it would seem that the burden was upon the latter to show that such payments had been made as absolved them from accounting to the estate for its property, which they had wrongfully received. It is true that the counsel for the defendants cites the case of Gray v. Bank, 105 Cal. 64, 38 Pac. 519, which seems to conflict with this view. But no authority in this state has been produced which imposes any greater obligation upon a party whose money has been misappropriated by the act of its servant than to establish the fact of such misappropriation, with the knowledge of the party receiving it. The defense that the right to such money has been lost, either by payment by the servant, or release, or otherwise, is an affirmative defense, which it is necessary for the defendants to allege and prove.

It is also claimed that the complaint was defective because no demand was alleged. Of course, if this action is to be considered as one in equity, no demand was necessary. If an action at law, neither was any demand essential to its maintenance. Notwithstanding the claim of the defendants' counsel that the receipt of the money in question was not wrongful ab initio, no other conclusion than that it was wrongful ab initio can be arrived at. The defendants knew at the time they received this money that it was trust money, or, at least, they were put upon inquiry; and no inquiry whatever was made until after the money had been at the risk of this Denver & Rio Grande speculation, which resulted in a loss, and then inquiry was only made (according to the testimony of the defendant De Cordova himself) of Mr. Noah. That he did not believe Mr. Noah's statement is evidenced by the subterfuge which was resorted to in order to take the money out of the category of trust funds by going through the form of payment to Noah as trustee, handing over the check to

him with one hand, and receiving back the proceeds of it with the other. No inquiry whatever was made where any information might be procured. But it is said that inquiry at the bank would have resulted in no information. This is not made to appear. Consequently, we have the defendants receiving the money under such circumstances as to put them upon inquiry, and making inquiry only from the party who was endeavoring to perpetrate the fraud upon the estate which he represented. The complaint seems to have been sufficient, therefore, whether we consider the action as one at law or in equity.

It is further urged that the proof was defective, in that there was no legal evidence that the defendants received any money from the Drake estate. It seems to us that the conclusion of the learned judge below was amply justified by the evidence introduced. It appears that Noah received $10,500 in cash belonging to the estate, and that a part of this money was used by him in this transaction, which was represented by the check of $5,000, signed by him as trustee. The criticism upon the unreliability of Noah's testimony seems to be equally applicable to the testimony of the defendant, who was examined upon this trial as a witness. He, shortly after the transactions now under consideration, was examined as a witness in respect to that transaction, and made statements which do not precisely harmonize with those made upon this trial.

It is also urged that the addition of the word "trustee" to the check was not such a notice of a trust as to put the defendants upon inquiry. The case of Gerard v. McCormick, 130 N. Y. 261, 29 N. E. 115, seems to lay down a different rule, and the cases therein cited clearly establish a different rule. Furthermore, it appears from the examination of the defendant De Cordova, made shortly after this transaction, that he knew this money was trust money, and desired to change the account for that reason, and went through the form above described of changing the account; which shows, not only that the defendants received the money under circumstances putting them upon inquiry as to the money being a trust fund, but that they knew the fact at the time. Under such circumstances it is not necessary for us to discuss the question as to whether proper inquiry was made.

As to the question of laches, we are of opinion that, as long as an action is brought within the period allowed by the statute of limitations, the right to maintain the same is not lost by mere lapse of time.

The only remaining question necessary to be discussed is as to the right to a trial by jury. It seems to be apparent that the action in question was equitable in its nature. The defendants had wrongfully received trust funds, and the estate to which it belonged had a right to receive the principal and all the increase which had resulted from its use. The plaintiff, therefore, had a right to an accounting in respect to this money. If a profit had been made, she would have been entitled to such profit. If the result of the speculation was a loss, she was entitled to recover the principal and interest,—clearly a cause of action of an equitable nature. Therefore there was no right to a trial by jury. And, even if the action be deemed an action at law, the defendants lost their right to a trial by jury by not mak-

ing their demand in time. Upon the trial the counsel for the plaintiff had opened the case, and the counsel for the defendants had made a motion to dismiss the complaint upon the ground that it did not state any cause of action. This motion was denied, and then came the question of a trial by jury. It seems to us that the rule is that, before the commencement of the trial, if a party desires to avail himself of the right to a trial by jury, he must make his demand, and not in any manner proceed with the trial. In the case at bar, as already stated, the case had been opened, and a motion made to dismiss the complaint, and the defendants took the risk of that ruling as part of the trial before making their demand for a jury. This was too late. The case of People v. Albany & S. R. Co., 57 N. Y. 161, in no way conflicts with this rule. In that case the plaintiffs set forth several causes of action, as they claimed, all of which but one were equitable, if anything. It was in their power to waive the legal claim set forth, and press only those which were equitable. Whether they would do so or not the defendants had no means of knowing until, after reading the pleadings, the plaintiffs rested without calling any witnesses. It was then for the first time apparent that the plaintiffs relied on the legal claim in respect to the title of the defendants to the offices in question. It was at this stage that the right to a trial by jury was claimed, and the court held that it was error to refuse it,—a case essentially different from the one above.

The judgment should be affirmed, with costs. All concur.