# FIRST NAT. BANK OF EL RENO v. GILLETTE.

No. 5689.    Opinion Filed November 9, 1915.

(152 Pac. 1084.)

**CORPORATIONS—Checks of Corporate Officer—Payment of Individual Obligation—Liability of Bank.** Where a bank in which the funds of a corporation are deposited, and to which bank an officer of the corporation intrusted with the management of its affairs is personlly indebted, knowingly accepts and pays a check drawn by such officer against the funds of the corporation in payment and satisfaction of his individual obligation. such bank is liable to the corporation for the amount of its funds so misappropriated in payment of the individual debt of such officer.

(Syllabus by Bleakmore, C.)

*Error from District Court, Canadian County; John J. Carney, Judge.*

Action by Fred A. Gillette, receiver, against the First National Bank of El Reno, Oklahoma.   Judgment for plaintiff, and defendant brings error.   Affirmed.

*Fogg & Bennett,* for plaintiff in error.

*Fred A. Gillette, in pro. per.*

Opinion by BLEAKMORE, C.   This action was commenced in the district court of Canadian county by the defendant in error, as plaintiff, against the plaintiff in error, as defendant, on October 22, 1912.   The parties will be referred to as they appeared in the trial court.

The Western Ice Company, a corporation doing business at El Reno and elsewhere in the state, in March, 1909, to secure the payment of its outstanding bonded indebtedness, executed a mortgage or deed of trust conveying to R. S. Trulock, as trustee, all its property and property rights and "all rights and equities accrued and

to accrue," and "all estate, right, title, interest, property, claims and demands whatsoever as well in law as in equity." It was also provided by said deed of trust:

"It is hereby made a covenant of this mortgage that upon the filing of such foreclosure suit upon application of the trustee the court shall appoint a receiver of all and singular the property conveyed by this mortgage or intended so to be as a matter of right and without notice." And: "The business shall at all times be economically conducted and shall receive the personal attention of either H. C. Bradford or J. T. Bradford, as manager, whose yearly salary shall not exceed $2,500.00, and shall be paid only out of any surplus, if any, left after all matured bonds including the maturing bond for the current year, and interest has been paid and redeemed. If, during any year after redeeming all matured bonds, and the bonds maturing that year, as well as any and all interest coupons due and unpaid, and after paying all running expenses, including the salary of the manager for current year, as well as any amount of salary for preceding years unpaid, if then any surplus profits remain, such surplus shall be used to redeem one or more of the then outstanding bonds."

On June 24, 1912, defendant bank loaned to the Western Ice Company $700, and as evidence thereof received the promissory note of the corporation for said sum with interest at the rate of 10 per cent. per annum payable on demand, signed "Western Ice Company, by H. C. Bradford, Sect.," and indorsed, "H. C. Bradford"; and to secure the same a chattel mortgage covering certain personal property of said company.

On and prior to July 5, 1912, said H. C. Bradford, who under the provisions of the mortgage was manager of said corporation, was indebted to the defendant on his personal account in the sum of $425, some time past due, which at the urgent request of the defendant he had

promised soon to pay with funds to be received from the
Rock Island Railway Company for icing cars. On said
day the check of the railway company for such service
was deposited in defendant bank to the credit of the ice
company. Whereupon the president of the defendant
called upon said Bradford for payment of his indebted-
ness to the bank. In response Bradford executed and
delivered to defendant the check or voucher of said ice
company drawn upon the funds so deposited and payable
to the order of defendant in the sum of $500, as follows:

"EL RENO, OKLA., July 25, 1912.

"Check No. 609. Pay to the order of First Nat'l
Bank $500.00, five hundred and 00/100 dollars.

"WESTERN ICE COMPANY,
"W. L. PATRICK, *Bookkeeper*.
"H. C. BRADFORD, *Secy*.

"Payable at First National Bank when properly
signed and receipted.

"Received in full settlement of account stated herein.

"FIRST NATIONAL BANK, EL RENO, OKLA.
"L. A. WILSON, *Pres., Payee*."

Voucher Number.

First National Bank.

Items covered by check on reverse side:

| Date. | Particulars. | Distribution. | Amount. |
|-------|-------------|---------------|---------|
| 7-25 | Note on stock from El Reno plant | Manufacturing .................. | |
| | | Repairs ...................... | |
| | | Delivery ..................... | |
| | | Fuel ........................ | |
| | | Bills Pay ..................... | $500.00 |
| | | General Expense ............... | |
| | | Entered ...................... | $500.00 |

This check was charged to the account and paid with
said funds of the ice company on deposit in said bank;
$425 of the proceeds thereof being applied by defendant
to the satisfaction of Bradford's individual obligation,

and the remaining $75 as a credit on the $700 note of the ice company. With reference to the circumstances of this transaction, the president of the bank testified:

"A. Mr. Bradford owed the bank personally $425, which had been overdue since the 1st of July, and we were quite urgent that it be paid, and I had called him up a time or two and written him once anyway, perhaps twice, urging him to bring that in. A day or two before this day I called him over the phone and asked him when he was going to bring us that $425, and he said the following day or the second day he would have their check from the Rock Island Railway Company for icing cars, that the Western Ice Company would have its check from the railroad which they got monthly, and he could not pay me until they got that, and then he would. So I was watching for when they should make that deposit as they always did, and on the morning of the 25th of July they brought the Rock Island's check to them and made the deposit with the Western Ice Company, but he didn't hand me the voucher for $425 just at that time, and I wanted it, of course, and so I called him up. I said, 'I see you made the deposit, but you didn't pay me the check you agreed to, that you would hand me today.' He said, 'Well, I made the deposit there, and I thought you would just charge that to us, make a charge slip for it.' I said, 'No, I would not care to do that. We don't do that way; that is not rulable, and I want a check for it.' He said, 'All right, I will bring you up one,' and he brought it up then to me in just a few minutes, drove up with his horse and buggy and brought me this voucher, and came in with it, and said, 'Now, here is a check for $500, and now this check is made out to bills payable because that is the only way I could make it under my arrangement with Mr. Trulock, but I will have to apply now $425 out of this to that item for the present, and you put the other $75 on this $700 chattel note,' and then he says that, 'Later Turner and I have some funds coming personally from the railroad and some claim, and we can adjust that $425

together later on with the company and I'— We had some conversation along that line, and I applied it as he requested me to do, $425 to the payment of the personal items of his personal indebtedness to the bank, and $75 on the note. He called my attention to the fact that this voucher was payable to bills payable, and stated that this is the only way he could issue it under his arrangements with Mr. Trulock, the only way he could pay the $425 was to use it that way and apply the $75 and then later personally adjust the matter with the company out of money he had coming from the railroad."

On September 13, 1912, plaintiff was by order of the district court of Canadian county appointed receiver to take charge of all the premises and property, franchises, contracts, rights in action, etc., mentioned and described in said mortgage or deed of trust, and was authorized and empowered thereby "to collect all debts, compound and compromise the same, to operate and manage the property known as the Western Ice Plant in the city of El Reno or adjoining the same, pending the foreclosure of plaintiff's said trust deed, and generally do such acts respecting the property mentioned as the court may authorize."

On the date plaintiff was appointed receiver, the ice company had on deposit to its credit in defendant bank the sum of $320, and on the same day defendant applied said sum as a further credit on said $700 note. Plaintiff qualified as receiver on the following day, and on October 5th, thereafter, was by order of the court specifically authorized and directed to institute this action.

In the petition it is alleged that said check for $500 was given in part payment of the $700 note, but that $425 thereof was, without the consent or authority of the ice company, appropriated by the bank and applied to

the satisfaction of the obligation of said Bradford; that said sum of $320, money of the ice company, so on deposit in said bank, was also applied on said note; by reason of which defendant had received and appropriated of the funds of said company the sum of $820 in payment of said $700 note. There was prayer for judgment for the sums so appropriated in excess of the amount due on the note. Trial was had to the court resulting in judgment for plaintiff, and defendant appeals.

As grounds for reversal, under its assignments of error defendant contends: (1) That the ice company itself could not have prevailed in this action; (2) that plaintiff as receiver in the proceeding to foreclose the mortgage should not be permitted to enforce a demand which would not have availed the mortgagor; and (3) that as such receiver he is without capacity or authority to maintain the action.

It is contended that the ice company was accustomed to allow its secretary and manager, Bradford, to pay his individual obligations with the checks or vouchers of the corporation, thereby empowering him to do so in this particular instance, and that were such company the plaintiff in the action it would be estopped to deny such authority. The testimony as to the custom of the ice company in this regard was by the officers of the bank, that of the president being:

"Q. Had Mr. Turner Bradford been in the habit, or had there been any custom, previous to that time, by them with reference to giving the check of the Western Ice Company on their private bills or to pay private bills? A. Yes, they had paid me items of personal obligation with checks of the company at former times. Q. Do you have any recollection about the forms of those vouchers, and what was in them? A. No, I don't recall,

but in former years, and right along, as they transacted business in their personal matters, they would bring me company checks not in great big amounts probably, but in items similar to the one paid in July, interest and such. * * * Q. Now, did they (the Bradfords) ever give you before a voucher made by the Western Ice Company to apply on some debt of the Western Ice Company, and then apply it on their own personal indebtedness? A. No, I don't recall they ever gave me a voucher drawn just as that one is to be applied to a personal—"

The $500 voucher or check not only bore upon its face marks of infirmity sufficient to put a prudent man upon inquiry, but evidenced the specific purpose for which it was drawn, *viz.*, part payment of the company's note to the bank. It plainly appeared that in this transaction Bradford could not properly act as agent of the ice company, as his interests were adverse. In addition thereto, defendant had actual knowledge, from his own statement, that Bradford was without authority from the corporation to use such funds in satisfaction of his individual debt, and of the subterfuge by which it was made to appear by the check therefor that the money so appropriated was being employed in the discharge of a corporate obligation.

It is said in *Wilson v. M. E. R. Co.*, 120 N. Y. 145, 24 N. E. 384, 17 Am. St. Rep. 625, and cited with approval in *Jenkins v. Planters' & Merchants' Bank*, 34 Okla. 607, 126 Pac. 757, that:

"Undoubtedly the general rule is that one who receives from an officer of a corporation the notes or securities of such corporation, in payment of, or as security for, a personal debt of such officer, does so at his own peril. *Prima facie* the act is unlawful, and, unless actually authorized, the purchaser will be deemed to have taken them with notice of the rights of the corporation. *Garrard v. P. & C. R. Co.*, 29 Pa. 154; *Pendleton v. Ray*, 2

Paige (N. Y.) 202; *Shaw v. Spencer*, 100 Mass. 388, 97 Am. Dec. 107, 1 Am. Rep. 115."

The rule is well established that one who takes a check drawn by a person as an officer of a corporation in payment of his individual debt is liable to the corporation for the amount of such check after it has been paid, if the funds of the corporation have been in this way misappropriated by such officer to pay his individual obligation, and the form of the check itself is ordinarily notice of such misappropriation. 7 Ruling Case Law, sec. 643, In *Emerado Farmers' Elevator Co. v. Farmers' Bank*, 20 N. D. 270, 127 N. W. 522, 29 L. R. A. (N. S.) 567, it is said:

"A banking institution is not authorized to pay out funds intrusted to it on deposit to a person known by it to stand in a trust relation to the depositor, when it has notice that such person intends to misappropriate and divert the fund received to his own uses when paid over; and in case such payment is made the amount so paid may be recovered at the suit of the depositor." *Atlantic Cotton Mills Co. v. Indian Orchard Mills*, 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698; *Gerard v. McCormack*, 130 N. Y. 261, 29 N. E. 115, 14 L. R. A. 234; *Marshall v. De Cordova*, 26 App. Div. 615, 50 N. Y. Supp. 294; *Coote v. Bank*, Fed. Cas. No. 3203; *Duckett v. Natl. Mechanics' Bank*, 86 Md. 400, 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513; *Rochester & Charlotte Turnpike Co. v. Paviour*, 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790.

See *Cent. Nat. Bank of Baltimore v. Conn. Mut. L. Ins. Co.*, 104 U. S. 54, 26 L. Ed. 693; *State Nat. Bank v. Payne*, 56 Ill. App. 147.

It is not even suggested that the ice company had actual knowledge of the misappropriation of its funds by application thereof to the payment of this individual debt

of its manager; and the transaction by which the same was accomplished serving only the personal ends of such manager, and his interest being adverse, no presumption arises that the company was informed thereof. *American Surety Company v. Pauly*, 170 U. S. 131, 18 Sup. Ct. 552, 42 L. Ed. 977; *Hummell v. Bank*, 75 Iowa, 689, 37 N. W. 957.

By virtue of the provisions of the mortgage or deed of trust, the order of his appointment, and the order of the court directing the bringing of this action, the receiver has capacity and authority to maintain the same.

The judgment of the trial court is correct, and should be sustained.

By the Court: It is so ordered.