BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1916.

---

MATT G. REYNOLDS, RECEIVER, Respondent, v. TITLE GUARANTY TRUST COMPANY, Appellant.

St. Louis Court of Appeals, October 24, 1916.

1. **CORPORATIONS: Officers: Payment of Private Debt with Corporate Funds: Liability of Recipient.** Where a check of a corporation, drawn by an officer thereof, is by him tendered to his creditor in payment of his individual debt, the fact that the instrument upon its face purports to be drawn upon corporate funds under the officer's control is sufficient to put the creditor upon inquiry, and. if such a check is accepted and used by the creditor, he runs the risk of being required to restore to the corporation the proceeds thereof; but this doctrine finds application only where the check is drawn upon funds actually belonging to the corporation and which the officer could not rightfully draw upon, whereby such funds are misappropriated.

2. **APPELLATE PRACTICE: Conclusiveness of Finding.** A finding by the trial court, sitting as a jury, upon any controverted question of fact is conclusive upon the appellate court, if supported by any substantial evidence.

3. ———: ———. While it is not the province of the appellate court to pass upon the credibility of witnesses or the weight to be given their testimony, nevertheless where testimony cannot possibly be true, a finding by the trial court, predicated thereon, is not binding upon the appellate court.

4. ———: ———. In an action for money had and received, brought by the receiver of an insurance company which had never become fully organized nor obtained authority to transact business conformably to the insurance statute, a finding by the trial court that a loan obtained by the promoter of the company was made to the company, predicated upon evidence to that effect, was not binding upon the appellate court, for the reason that, such company never having become fully organized nor authorized to transact business, the evidence upon which the finding was based could not possibly be true.

5. **CORPORATIONS:** Promoters: Right to Act for Corporation Not In Esse. A promoter of a corporation may not act as agent for it before it has corporate existence, since one cannot be the agent of a principal not *in esse*.

6. **INSURANCE:** Insurance Companies: Organization: Existence: Statute. Under Sec. 6900, R. S. 1909, providing that, whenever the corporators of an insurance company shall have filed with the superintendent of the insurance department the declaration of intention to form a corporation required by Sec. 6898, together with the proof of publication required by that section, such superintendent shall submit the declaration to the Attorney General, who, if he finds it in accordance with the law, shall so certify to the superintendent, who shall record the· papers with the certificate, furnish a certified copy thereof to the corporators, and file a certified copy with the Secretary of State, who, on payment of the tax required by Sec. 2976, shall issue a certificate of incorporation authorizing the company to open books for subscriptions to its capital stock, and further providing that it shall be unlawful for the company to transact any business until it has fully complied with the article and Secs. 6901, 6902, providing for the steps to be taken, after the capital stock has been subscribed, to procure authority to transact business, the issuance to the corporators of the certificate of incorporation does not give existence to the corporation, but it remains *in utero* until the capital stock is fully subscribed and authority to transact business·is obtained in the manner provided by the statute; the "certificate of incorporation" merely having the effect of granting to the "corporators" the power to open books of subscription and take subscriptions to the capital stock of the proposed corporation.

7. **CORPORATIONS:** Insurance Companies: Payment of Promoter's. Debt with Supposed Funds of Corporation: Corporation not In Esse: Liability of Recipient. The promoter of an insurance company deposited in a bank, in the name of the proposed corporation, funds individually procured by him by means of a loan. A certificate of incorporation was issued to the proposed company, pursuant to Sec. 6900, R. S. 1909, but the capital stock was not fully secured nor authority to transact business obtained, in the manner provided by Secs. 6901, 6902. The promoter paid his individual debt by means of

a check drawn upon these funds, and the receiver of the company brought suit against the recipient of the check, on the theory that it was liable by reason of having accepted and used a check drawn upon corporate funds, in payment of the promoter's individual debt. *Held*, that the fact that the funds upon which check was drawn were held in the name of a company proposed to be incorporated and of which the promoter styled himself secretary, did not have the effect of constituting the funds corporate funds, and, by reason of the fact that the proposed corporation had never been authorized to transact business as an insurance company, it had no legal existence, and could not ratify or adopt the transaction so as to affect the character of the funds or become liable for the repayment of the loan by which they were obtained, and hence the receiver was not entitled to recover.

8. ————: Promoters: Fiduciary Relations. The promoters of a corporation stand in a fiduciary relation to it, but it does not follow that all moneys belonging to or procured by a promoter which may be handled or dealt with by him during the promotion are impressed with a trust in favor of the corporation.

Appeal from St. Louis City Circuit Court.—*Hon. Rhodes E. Cave,* Judge.

REVERSED.

*Wilfley, McIntyre & Nardin* and *Harry W. Allen* for appellant.

(1) The action for money had and received is equitable in character; is governed by principles of equity, and lies where one person has received money belonging to another which in justice and good conscience he should not be permitted to retain. Third National Bank v. St. Charles Sav. Bank, 244 Mo. 581; Reynolds v. Gerdelman, 185 Mo. App. 183. (2) A promoter is not an agent of the corporation to be formed, and the corporation is not liable for contracts entered into by promoters. Joy v. Manion, 28 Mo. App. 60; Davis & Rankin v. Creamery Association, 63 Mo. App. 480. (3) The promoters or incorporators of an insurance company, even after the certificate of incorporation is issued, have no power to enter into any contract except that of a stock subscription and have no power to ratify or adopt any contract for the expenditure of any proceeds of the sale of stock,

or pay any expense incurred by a promoter in organizing the company. Taylor v. St. Louis National Life Insurance Company, 266 Mo. 283. (4) The promoter of a corporation is in a fiduciary relation to the corporation, in that he may not dispose of property to the corporation at a secret profit to himself; is a trustee, prior to the completion of the company, for the subscribers of money received from them on stock subscriptions, but is not a general trustee for the proposed corporation. South Joplin Land Co. v. Case, 104. Mo. 572; Miller v. Denman (Wash.), 95 Pac. 67, 16 L. R. A. (N. S.) 348; Brooker v. Trust Company, 254 Mo. 155. (5) Gardner not being the agent for the Assurance Company at the time the loan was made by Caneer, even though a trustee for the Assurance Company, could not bind the company to repay the loan, though it was made in the name of the company, for a trustee making a loan in the name of the trust estate binds only himself. Koken Iron Works v. Kinealy, 86 Mo. App. 203; Taylor v. Davis, 110 U. S. 335. (6) An implied trust arising out of circumstances from which an intention to hold money or property for the benefit of another is presumed, is a resulting trust. Perry on Trusts (5 Ed.), sec. 127. (7) A resulting trust must arise from circumstances existing at the time the person sought to be charged as trustee took the property sought to be impressed with the trust, and cannot be established by subsequent acts or circumstances. Richardson v. Champion, 143 Mo. 544; Stevenson v. Haynes, 220 Mo. 206; Barrett v. Foote, 187 S. W. 67; Krauth v. Thiele, 45 N. J. Equity 409; Whitley v. Ogle, 47 N. J. Equity 69; Barnard v. Jewett, 97 Mass. 87; Dick v. Dick, 172 Ill. 578; DeRoboam v. Schmidtlin, 50 Ore. 388; Herlihy v. Coney, 99 Me. 469; Parker v. Coop, 60 Tex. 118; Arnold, Receiver, v. Ellis, 20 Tex. Civ. App. 262; Hadley v. Stewart, 62 Ia. 267. (8) The contract of Gardner to borrow money from Caneer for the Assurance Company could not be ratified by the company after it was organized, thus relating back to the date of the loan and making the proceeds the property of the company when the loan was made, for

there can be ratification only where the person ratifying was in existence at the time the contract was made. 31 Cyc. 1246; McArthur v. Times Printing Co., 48 Minn. 319. (9) If the Assurance Company adopted the contract between Gardner and Caneer, it made it its contract at the time of its adoption, subject to all the burdens and conditions attached to it. Watson v. Bigelow, 47 Mo. 413; Shinn v. Mule Co., 109 Mo. App. 557; Porter v. Wood, 138 Mo. 539; State ex rel. v. Harrington, 100 Mo. 170; Nichols v. Kern, 32 Mo. App. 1. (10) When the receiver brought suit against Gardner to recover from him the money paid to the Title Guaranty Trust Company, he elected to treat Gardner as a debtor and chose a course inconsistent with the present action. Oliver v. Piatt, 15 U. S. 485; Stoller v. Coates, 88 Mo. 514; Barker v. Barker, 14 Wis. 131; Carter v. Gibson, 61 Neb. 207; Libby v. Frost, 98 Me. 288; Murray & Winter v. Ballou & Hunt, 1 Johnson's Chancery 565; Murray v. Tilburn, 2 Johnson's Ch. 441. (11) There was no evidence to support the finding of the trial court that defendant had notice that the money it received belonged to the Continental Assurance Company. Coleman v. Stocke, 159 Mo. App. 43.

*John S. Leahy* and *Chase Morsey* for respondent.

(1) The Title Guaranty Trust Company, having accepted a check of the Continental Assurance Company of America in payment of a private debt of Harry B. Gardner, the officer drawing the check, took the money with knowledge of the fact that it was not Harry B. Gardner's and in this action for money had and received must account for its proceeds. St. Louis Charcoal Co. v. Lewis, 154 Mo. App. 548; Coleman v. Stocke, 159 Mo. App. 43; Rochester v. Pavior, 164 N. Y. 281; Bank v. Edwards, 243 Mo. 569; Bank v. Orthwein, 160 Mo. App. 369. (2) One who has notice sufficient to put him upon inquiry is bound by every fact which an inquiry would have disclosed. Lakeman v. Trust Co., 147 Mo. App. 48; Barrett v. Davis, 104 Mo. 549; Rupe v. Alkire, 77 Mo. 641. (3) While the Continental Assurance Company of

American may not, strictly speaking, have been liable on
the contract by which the money was borrowed from the
Citizens' Bank of Senath, Missouri, still it was liable
under the broad equitable principles of an action for
money had and received. Third National Bk. v. St.
Charles Savings Bk., 244 Mo. 554. (4) At the time of
the transaction in question, the Continental Assurance
Company of America was in process of formation. The
initial steps, such as signing the articles of association
and publication of the declaration of intention to form
the corporation, had been taken and all persons dealing
with the company were bound to take notice of these
facts. Ellerby v. Bank, 109 Mo. 445. (5) Where a stat-
ute requires a number of steps to be taken before the
company is entitled to a certificate of incorporation and
further requires the public to be notified of these steps,
as in the case at bar, the taking of the final step and the
securing of the certificate of incorporation relates back
to the time of the taking of the first step and all the
rights, duties and liabilities of the corporation are deter-
mined as of the date of the first step whenever it is
necessary to prevent a failure of justice. Knapp v.
Alexander, 237 U. S. 162; Peyton v. Desmond, 129 Fed.
1; U. S. v. Anderson, 194 U. S. 394. (6) By the doctrine
of relation is meant that principle by which an act done
at one time is considered by a fiction of law to have been
done at some antecedent period. It is usually applied
where several proceedings are essential to complete a
particular transaction, such as a conveyance or deed.
The last proceeding which consummates the conveyance
is held for certain purposes to take effect by relation as
of the date the first proceeding was had. Gibson v.
Chouteau, 13 Wall. 92; Knapp v. Alexander, 237 U. S.
162; Peyton v. Desmond, 129 Fed. 1; U. S. v. Ander-
son, 194 U. S. 394. (7) To obtain the certificate of in-
corporation it was necessary to pay the fees of the Sec-
retary of State and the fees for publishing the declara-
tion of intention. Someone was bound to pay these fees.
Mr. Gardner and his associates primarily—the corpora-
tion ultimately. For all business transacted for the bene-

fit of the corporators during these preliminary steps the corporators were liable as partners. The money was borrowed in the name of the company to cover the initial expenses of incorporation. Mr. Gardner misappropriated $5445.18 of the amount borrowed, and if the company had never received its certificate of incorporation the corporators—the partnership—could have recovered the money from the Trust Company in an action for money had and received. The company, however, having received its certificate of incorporation and having repaid the loan, now has the same right to maintain the action as the corporators—the partnership. (8) By instituting a suit against Gardner to recover the amount of money unlawfully withdrawn by him from the Third National Bank, the Receiver made no election of remedies because all of his remedies in this case are consistent. Steinbach v. Murphy, 143 Mo. App. 530; National Bank v. City Bank, 103 U. S. 668; Sweet v. Bank, 69 Kan. 741; State v. Home Ins. Co., 58 Neb. 524; Freeman v. Bailey, 50 S. C. 241; Squire v. Ordemann, 194 N. Y. 394; Citizens' Bank v. Rucker, 138 Cal. 606. (9) The doctrine of resulting trust has no application to the facts in the case at bar. The Receiver is not trying to impress a trust upon the real estate. He is seeking to recover from the Trust Company on the theory of money had and received, or, in other words, on the theory of a constructive trust. The difference between resulting and constructive trusts is marked and well defined. 39 Cyc., page 26 et seq.

ALLEN, J.—This is an action prosecuted by the receiver of the Continental Assurance Company of America as for money had and received. The first count of the petition is predicated upon the theory that the defendant is liable for the return of the proceeds of a check for the sum of $5445.18, executed in the name of the Continental Assurance Company of America, and which is said to have been received by the defendant Trust Company in payment of a private debt of one Harry B. Gardner, a promoter of the Assurance Com-

pany. The second count of the petition is predicated upon a like theory, involving the proceeds of a check for $250. The trial, before the court without the intervention of a jury, resulted in a judgment for plaintiff on the first count of the petition, and a judgment for defendant on the second count thereof, and the case is here on defendant's appeal.

The evidence discloses that prior to March, 1909, one Harry B. Gardner borrowed certain moneys from the defendant Trust Company, giving the latter as security therefor a second deed of trust upon his home in the city of St. Louis. He was unable to pay this debt at maturity, and the defendant Trust Company caused the property to be sold under the deed of trust held by it, and purchased the same at the trustee's sale subject to a first deed of trust thereon of $10,000. It was thereafter agreed, however, between defendant and Gardner, that the latter might redeem the property by fully reimbursing defendant, the amount to be so paid amounting in all to $6445.18; and Gardner paid defendant $1000, leaving a balance of $5445.18 due the Trust Company at the time of the transactions with which we are here concerned.

Early in 1909 Gardner was engaged in promoting the organization of an insurance company under the law of this State, to-wit, sections 6895 et seq., Revised Statutes 1909; and in furtherance of this design he and certain other persons whom he had associated with him caused to be published in a newspaper in the city of St. Louis a declaration of their intention to incorporate an insurance company to be known as the Continental Assurance Company of America, publishing therewith a copy of the proposed charter of the company sought to be organized. This publication first appeared on February 17, 1909, and was repeated on February 24, March 3 and March 10, of the same year. However, a defect, or supposed defect, was discovered in the matter so published, and the same was amended and republished for four consecutive weeks beginning March 27 and ending April 17, 1909. Thereafter the declaration and the copy

of the proposed charter so published were filed in the office of the superintendent of the insurance department of the State; and thereafter, to-wit, on April 24, 1909, a certificate of incorporation was issued to the company, as provided by section 6900, Revised Statutes 1909. It appears that thereafter a large number of subscriptions were procured to the capital stock of the company, but that all of its capital stock was never fully subscribed; and it consequently never obtained a certificate of authority to transact business under section 6902, Revised Statutes 1909. Its career was terminated by plaintiff's appointment as receiver on June 10, 1910.

Prior to the issuance of the certificate of incorporation of April 24, 1909, above referred to, to-wit, on February 29, 1909, Gardner opened a bank account with the Third National Bank of St. Louis, in the name of the proposed company, viz: "Continental Assurance Company of America," which account he made use of in promoting the proposed company. On March 26, 1909, nearly one month prior to the issuance of the certificate of incorporation above mentioned, Gardner drew a check upon this account, executed in the name of the Continental Assurance Company of America, "by Harry B. Gardner, Secretary," payable to the defendant Trust Company, for the sum of $5445.18, and caused it to be tendered to defendant in payment of said amount necessary to redeem his property. The evidence is that defendant refused to accept this check, and notified Gardner that it would accept only cash or a cashier's check. It appears, however, that the endorsement of defendant was placed upon the check by one of its officers. It was subsequently presented to the Third National Bank and was utilized to procure a cashier's check for a like amount, payable to the defendant, which check the defendant accepted. Defendant thereupon deeded the property, i. e., Gardner's home, to one W. H. Douglas, subject to the first mortgage thereon, in conformity to an understanding and agreement had between the parties in the premises. The connection of Douglas with the matter will more fully appear from the evidence

presently to be stated respecting the source from which the money used to redeem the Gardner property was derived.

It appears that on March 23, 1909 (more than one month prior to the issuance of the certificate of incorporation to the Assurance Company), as the result of a loan of $6250 procured by Gardner from the Citizens Bank of Senath, Missouri, or from one A. A. Caneer, its cashier, the account which Gardner had opened in the Third National Bank in the name of the Continental Assurance Company of America, was credited with the sum of $6243.75, being the proceeds of a draft, less exchange. It appears that a draft for $6250 was drawn in the name of the Continental Assurance Company by Gardner, as secretary, upon the Citizens Bank of Senath, which was subsequently honored by the latter bank. It further appears that prior to this time there had been deposited in this account, in the Third National Bank, but the sum of $2125, and that $1625 had been checked out; leaving a balance in the account of $500. After the deposit of the $6243.75 above mentioned, to-wit, on March 26, 1909, Gardner's indebtedness to defendant was paid from this account, in the manner above stated.

Douglas, who had formerly been president of the Citizens Bank of Senath, had, shortly prior to the time of the transactions here in question, become connected with the promotion of the Assurance Company. He testified that after the sale of the Gardner house under foreclosure, Gardner, or one Gillespie for Gardner, asked him to assist in borrowing the money necessary to redeem the property, and that in pursuance of such request he undertook to procure a loan for such purpose from the Citizens Bank of Senath; that he was not then an officer of the bank, but a stockholder, and "looked after some affairs of the bank on request," because his father and brother were directors thereof and his family interested therein; that he took up the matter with Caneer, cashier of the bank, and advised him that the second deed of trust on the Gardner house would be safe security for a loan of $6500; that the loan was thereafter made, and

he (Douglas) received from Gardner a "check or draft" and redeemed the property, taking title in his own name for the protection of the Citizens Bank of Senath, which he represented; and that after so acquiring title to the property he executed a deed of trust thereon for $6500 and delivered it either to Gardner or Gillespie for the purpose of having it sold and thus procure money to repay the Citizens Bank of Senath; and that after the execution of this second deed of trust he (Douglas) conveyed the property to Gardner subject to the two deeds of trust. He stated that the money in question was borrowed from the Citizens Bank of Senath by Gardner personally, and not by the Assurance Company, "as all transactions up to that time were with Gardner personally;" but that the name "Continental Assurance Company of America" was used for the reason that Gardner was "in bankruptcy" and did not want to transact business in his own name.

Gardner testified that the fund placed to the credit of the account in the name of the Continental Assurance Company in the Third National Bank, to-wit, $6243.75, was the proceeds of a loan secured by him from A. A. Caneer, cashier of the Citizens Bank of Senath; that it was a part of a loan for $10,000 which he (Gardner) had arranged to get from Caneer, the money to be used in promoting the Continental Assurance Company. According to his recollection the deposit so made was a personal check of A. A. Caneer. He testified that he entered into a written contract with A. A. Caneer on March 12, 1910, for the loan to him personally of $10,000. It appears that the original contract had been lost, but the witness identified a copy thereof which was introduced in evidence and which is as follows:

"St. Louis, Mo., March 12, 1909.

"This contract, entered into by and between A. A. Caneer and H. B. Gardner, for and in consideration of a loan of ten thousand dollars ($10,000), to be made to H. B. Gardner by A. A. Caneer, and the services of Caneer in the office and officially, as may seem best for the interest of the Continental Assurance and the Inter-

national Fire Assurance Companies now being organized in St. Louis, Missouri, the said loan or any part less than $10,000 loaned shall be paid back to said Caneer on or before January 1, 1910; and it is understood that A. A. Caneer shall devote his entire time and assistance toward the organization of the insurance companies up to January 1, 1910, and H. B. Gardner guarantees to pay the said loan as aforesaid and pay to A. A. Caneer the sum of ten thousand dollars ($10,000) for his (Caneer's) services to said Gardner and companies.

(Signed) A. A. CANEER.

H. B. GARDNER.''

Caneer testified that on or about March 24 or 25, 1909, the Citizens Bank of Senath received from the Third National Bank of St. Louis a draft drawn by Gardner in the name of the Continental Assurance Company of America for $6250; that the Citizens Bank of Senath withheld payment until it communicated with Gardner ''who explained that he needed more money to keep the business of promoting the company going'' and that if the bank would honor the draft the money would be replaced within a short time from the sale of company stock. And he testified that certain moneys thereafter derived from the sale of stock of the Assurance Company ''in the territory where the bank was located,'' were deposited in the Citizens Bank of Senath, and that such moneys were utilized to reimburse the bank for the loan. On cross-examination he stated that the loan in question was made to ''the Continental and International Insurance Companies;'' and that no note or collateral was taken therefor. The testimony of this witness was impeached, however, by the testimony of two members of the firm of attorneys representing the defendant who testified that Caneer, in a telephone communication heard by both of the attorneys, had stated that the loan in question was made to Gardner personally and that it was secured by a note for $6500 executed by Douglas and secured by a second deed of trust on the Gardner house. And the undisputed evidence is that the note and deed of trust, last mentioned, found their way into the hands

of the Citizens Bank of Senath; but Caneer testified that these were not taken as security for the loan of $6250, but for a subsequent loan of $3500.

Defendant in its answer pleaded that plaintiff had previously prosecuted an action against Gardner, with full knowledge of all the facts and circumstances connected with the transaction here in controversy, and in that action had obtained a final judgment against Gardner for the sum of $135,489.35, which sum included the item of $5445.18 which plaintiff seeks to recover in the first count of the petition herein; and that plaintiff, having thus elected to pursue his remedy against Gardner, was barred from prosecuting the cause of action declared upon in said count. And the evidence disclosed that a judgment had been so obtained by plaintiff against Gardner upon a demand which included the item here in controversy.

The court made a special finding, setting forth its findings of fact and conclusions of law. These need not be set out at length, but in the course of the opinion we shall have occasion to refer to the court's ultimate findings and concluions upon which it predicated its judgment in plaintiff's favor.

I. The general doctrine invoked by plaintiff is one supported by reason and authority. Where a check of a corporation, drawn by an officer thereof, is by him tendered to his creditor in payment of his individual debt, the fact that the instrument upon its face purports to be drawn upon corporate funds under the officer's control is held to suffice to put the creditor upon inquiry; and if a check of such character is accepted and used by the creditor he runs the risk of being required to restore to the corporation the proceeds thereof. [See Charcoal Co. v. Lewis, 154 Mo. App. 548, 136 S. W. 716; Coleman v. Stocke, 159 Mo. App. 43, 139 S. W. 216; Rochester v. Paviour, 169 N. W. 281.] But this doctrine finds application only where the check of a corporation, thus used to pay an officer's private debt, is drawn upon funds actually belonging to the corporation and which the

officer could not rightfully draw upon, whereby corporate funds are misappropriated. It is not to be supposed that one who receives such a check in the payment of an officer's private debt is liable to answer over to the corporation when in truth corporate funds were not utilized in the transaction, and the corporation thereby suffered no loss. No one will contend that an action for money had and received will lie against the recipient of such a check of a corporation taken for the payment of an officer's private obligation, merely because of the fact alone that the corporation's check was employed in the transaction. On the other hand such use of a check of a corporation is sufficient to put the creditor upon his guard; and he accepts it at his peril. We are to consider whether or not the facts of this case bring it within the doctrine invoked; bearing in mind that the trial court, sitting as a jury, has found the facts in plaintiff's favor, and that its finding on any controverted question of fact is conclusive upon us if supported by any substantial evidence.

II. It is argued for appellant that plaintiff's action declared upon in the first count of the petition is barred by reason of having obtained a judgment against Gardner for a sum which included that item; that, having elected to thus pursue Gardner, plaintiff is now precluded from asserting his said claim against defendant. The trial court took the view that both remedies were available to plaintiff, though but one satisfaction could be had. But we shall dispose of the case on other grounds, assuming, without deciding, that the trial court was correct in this holding.

III. Another question arises because of the state of the evidence relative to what occurred when defendant was paid the sum sought to be recovered. All of the evidence touching the matter shows, and the trial court so found, that the defendant refused to accept the check executed in the name of the Assurance Company and tendered in payment of Gardner's debt, and demanded either cash or a cashier's check; and that thereafter a

cashier's check was delivered to the defendant, whereupon it conveyed the property to Douglas. But the check drawn in the name of the Assurance Company had (inadvertently or otherwise) been indorsed by defendant, and was used at the bank to procure the cashier's check. There is no positive testimony as to who presented the original check to the bank in order to procure the cashier's check, but the uncontradicted evidence is that the cashier's check was delivered to defendant, either by Gardner himself or by Douglas for him, making it appear that the original check was presented to the bank by Gardner or some one representing him. Plaintiff's case therefore is brought within the doctrine of the cases cited above, if at all, by reason of the fact that defendant's indorsement (unexplained) is found upon the original check which was utilized as above stated. Under the circumstances we are not prepared to say that the mere appearance of this indorsement on the check is sufficient to bring the case within the doctrine relied upon. But in the view which we take of the case it is unnecessary to pass upon this question.

IV. The vital question presented upon the record is whether or not there is any evidence, of probative force and value, that funds of the Continental Assurance Company of America were in fact drawn upon and utilized to pay the private debt of Gardner, who assumed to act as secretary of the proposed corporation. On March 26, 1909, the date of the transaction with defendant Trust Company here in question, the Continental Assurance Company of America, was not in existence. Its promoters were proceeding with the steps leading up to its incorporation, and were then publishing the declaration of intention to form a corporation under the statutes mentioned above. That declaration, together with the proposed charter, had not been filed in the office of the superintendent of insurance, as required by section 6898, supra. Such declaration and proposed charter were thereafter so filed, and on April 24, 1909, a certificate of incorporation was issued by the Secretary of State, in accordance with section 6900, supra. The Assurance

Company therefore had no existence whatsoever prior to April 24, 1909; the term, "Continental Assurance Company of America," was but a name utilized by Harry B. Gardner for his individual purposes. As early as February 29, 1909, nearly two months before the certificate of incorporation was issued, Gardner opened the bank account in this name, which he used as he saw fit. But three deposits were made in that account prior to the deposit made as a result of the loan from the Citizens Bank of Senath, or Caneer, its cashier, and out of which Gardner's debt to the defendant Trust Company was paid. All of the evidence, excepting the bare statement of the witness Caneer, is to the effect that this loan was made to Gardner personally, and the evidence tends strongly to show that it was upon the security of Gardner's own property, which is said to have been deeded to Douglas to secure the Citizens Bank of Senath, into whose possession the deed of trust executed by Douglas found its way. The testimony of Caneer, to the effect that the loan was made to the Assurance Company, is wholly devoid of probative force and must be rejected as valueless. It is not our province to pass upon the credibility of witnesses or the weight to be given to their testimony; but the testimony that the loan was made to the Assurance Company cannot possibly be true, for that company had no shadow of existence at the time, and in fact never reached the point where it had the corporate power to enter into a transaction of such character.

If the loan was a part of the $10,000 agreed to be loaned by Caneer to Gardner, in accordance with the written contract between them, quoted above, it was nevertheless Gardner's personal affair and not that of the corporation which then had no existence. If it be true that the loan was ostensibly made to furnish Gardner funds with which to carry on the promotion of the company, it was none the less a matter personal to Gardner. The corporation, not being in any sense in existence, could not have been a party to the transaction; neither could Gardner have acted as agent for it, since one cannot be the agent of a principal not *in esse*. There is no

element of ratification or adoption present.  Properly speaking the corporation could only become liable upon the contract by adopting the same as its own (see Furniture & Carpet Co. v. Crawford, 127 Mo. l. c. 364, 365, 30 S. W. 163), but, as we shall readily see, this corporation failed to reach the stage where it was possible for it to bind itself upon any contract or undertaking entered into by its promoters.

Section 6900, Revised Statutes 1909, referred to above, provides that whenever the corporators of an insurance company of the character here in question shall have filed the declaration required by ·section 6898, supra, together with proof of publication required by the latter section, with the superintendent of the insurance department of the State, it shall be the latter's duty to submit such declaration to the Attorney General for examination, and if it shall be found by him to be in accordance with the provisions of article II, chapter 61, Revised Statutes 1909, and ''not inconsistent with the Constitution and Laws of this State and of the United States,'' he shall so certify and deliver the same back to the superintendent who shall cause the papers, with the certificate of the Attorney General, to be recorded and shall furnish a certified copy thereof to the corporators and file a like certified copy with the Secretary of State who, upon payment into the State treasury of the tax required by section 2976, Revised Statutes 1909, shall issue a certificate of incorporation, ''upon the receipt of which they (the corporators) shall become a body politic and corporate and may proceed to organize in the manner set forth in their charter and to open books for subscriptions to the capital stock of the company and keep the same .open until the whole amount specified in the charter is subscribed, *but it shall not be lawful for such company to issue policies or transact any business of any kind or nature whatsoever, except as aforesaid, until they have fully complied with the requirements of this article.*''  (Italics ours.)

Sections 6901 and 6902 provide steps to be taken after the capital stock named in the charter has been

fully subscribed, and $100,000 thereof paid in, in order to procure authority to transact business as an insurance company.

Under these statutes the issuance to the corporators of the so-called certificate of incorporation does not give birth to the corporation. It remains *in utero* until the capital stock is fully subscribed and authority to transact business is obtained in the manner provided by the statute. The "certificate of incorporation" merely has the effect of granting to the "corporators" the power to open books of subscription and take subscriptions to the capital stock of the proposed corporation. [See Taylor v. Insurance Co., 266 Mo. 283, 181 S. W. 8.]

It is therefore readily apparent that by no possible means could the "Continental Assurance Company of America" have made itself liable for moneys loaned by Caneer or his bank to Gardner for promotion purposes or otherwise. Even after the issuance of the certificate of incorporation no power resided in the corporators, or the proposed corporation, to transact business of any such character. [See Ellerby v. Bank, 109 Mo. 445, 19 S. W. 241; Taylor v. Insurance Co., supra.] And in no sense were the funds thus obtained by Gardner corporate funds. They did not come from stock subscriptions, but were procured by Gardner for his individual purposes, whatever they may have been, prior to the time when the corporators became clothed with power to take subscriptions to the capital stock.

The trial court, in its findings of fact, in part states:

"The court is of opinion that the testimony of the witnesses can only be harmonized with each other and with the undisputed facts upon the theory that the money was loaned to Gardner, but for the Assurance Company; and I therefore find the fact to be that this loan was made to and became the property of the Assurance Company, and that there were no funds belonging to Gardner individually mingled in the account of the company in the Third National Bank. Nor, in so holding have I overlooked the fact that a second deed of trust on the property, 5000 Raymond avenue, was given as securi-

ty for the loan. The company may have borrowed the money and Gardner furnished the security, and still it would be a loan to the company."

But the finding that the loan "was made to and became the property of the Assurance Company" has nothing to support it; and we are consequently in no manner bound thereby. And equally untenable is the theory that the loan was made for the Assurance Company and thereby became impressed with a trust in its favor. It is true that promoters stand in a fiduciary relation to the corporation which they bring into being, but it does not follow that all moneys belonging to or procured by a promoter, which may happen to have been handled or dealt with by him during the promotion of the corporation, are impressed with a trust in its favor. The fund here utilized to pay defendant was one procured individually by Gardner, and, as the trial court finds, upon security furnished by him. It never came into the treasury of the corporation, and in truth was not disbursed by an officer thereof. The fact that it was deposited in and temporarily became a part of a bank account which Gardner had opened under a name which he intended to use as the name of a company proposed to be incorporated, and of which he styled himself secretary, did not have the effect of constituting it a corporate fund. And for the reasons noted above, it was impossible for the corporation to ratify or adopt the transaction so as to affect the character of the fund or become liable for the repayment of the loan. The fact that funds subsequently derived from the payment of subscriptions to the capital stock of the company, which came into the possession of the Citizens Bank of Senath, are said to have been retained and utilized to repay the money borrowed by Gardner, is a matter with which we cannot reckon in this action.

We regard it as altogether clear that the plaintiff receiver wholly failed to make out a case falling within the doctrine relied upon. It follows that the judgment must be reversed, and it is so ordered. *Reynolds, P. J.,* concurs.