## GREAT SOUTHWEST LIFE INS. CO. et al. v. PRUITT & HARP.

No. 25020. Sept. 8, 1936.

Rehearing Denied Oct. 6, 1936.

Brett & Brett, for plaintiffs in error.

Stephen A. George, for defendants in error.

PER CURIAM. Action as for money had and received, commenced in the district court of Carter county, Okla., by Pruitt & Harp, a copartnership composed of H. A. Pruitt and O. G. Harp, plaintiffs, against the Great Southwest Life Insurance Company, a corporation, and Southwestern Life Company, a corporation, defendants.

The cause was tried to the court and jury and resulted in a verdict and judgment in favor of the plaintiffs in the sum of $1,300 and interest. Defendants filed timely motion for new trial, which was overruled, exception allowed, and they appeal.

The parties will be referred to as they appeared in the lower court.

Plaintiffs are a copartnership, composed of H. A. Pruitt and O. G. Harp, engaged in the poultry business. One of their offices or places of business was located at Madill, Okla. Mr. W. L. Harp, a brother of O. G. Harp and a cousin of H. A. Pruitt, but not a member of the partnership, was employed

by the firm as local manager of their place of business at Madill, with authority to issue checks against the funds of the firm on deposit with the First National Bank in Madill, when incident to and necessary and proper in carrying on the business of the firm at that place, but with no authority to issue checks on the firm account in payment of his own private obligations.

During the month of June, 1931, W. L. Harp purchased 200 shares of the capital stock of the defendant Great Southwest Life Insurance Company, 200 shares of the capital stock of the defendant Southwestern Life Company, and two endowment bonds of the defendant Southwestern Life Company, for $1,000 each, for all of which he paid the sum of $2,300. This sum was paid by five separate checks given on the First National Bank in Madill, Okla., signed "Pruitt & Harp Produce Co. By W. L. Harp." Printed on the end of each of the checks was the following:

"Pruitt & Harp Produce Co.

"Poultry, Furs, Pecans, Madill, Oklahoma."

One of these checks, for $300 was payable to Means & Miles, who were the agents of Southwestern Life Company. Three of the checks, one for $100, one for $500, and one for $400, were payable to Jay Graham, who was the state manager of Southwestern Life Company. The other, for $1,000, was payable to Southwestern Life Company. The stock and bonds were made out in the name of W. L. Harp and delivered to him, and the payees of the above check cashed them at the bank and received the money thereon.

A short time after this transaction the plaintiffs learned that W. L. Harp had issued these checks in payment of said stock and bonds, and they took the matter up with the defendants, repudiated the authority of W. L. Harp to check on their account in payment of said stock and bonds, and demanded the money back. A controversy thereupon arose, and the plaintiffs' evidence was to the effect that defendant agreed to take back the stock and pay the plaintiffs the money, and they did pay $1,000 thereon. Defendants' evidence is to the effect that they had nothing whatever to do with the transaction, that two of their officers, to wit, Alfred I. King and R. L. Jolliff, sold this stock personally to W. L. Harp, and that after complaint made they agreed to try to resell it for him and did sell $1,000 worth of the stock and paid the money to plaintiffs.

The evidence was clear that W. L. Harp had no actual authority to issue these checks, his authority in that behalf being limited to giving checks in connection with the firm's business, but it was contended by the defendants that the plaintiffs, by placing said W. L. Harp in charge of their business, with authority to write checks on their account and with apparently unlimited possession, dominion and control over the plaintiffs' property and bank account at Madill, were now estopped to deny that he had this authority, and, further, that they had no actual knowledge of the limitation of his authority, nor did they have knowledge of such facts as would put them upon inquiry, which, if pursued with reasonable diligence, would lead to the discovery of the fact that said agent had no such authority.

There was also some evidence to the effect that W. L. Harp had theretofore issued checks in part payment for a refrigerator and a Chrysler car which he had purchased for himself, and, further, that the title to the property which the firm was occupying as an office or place of business in Madill was in the name of W. L. Harp, and it was contended that all of this constituted a holding out by plaintiffs of W. L. Harp as having authority to use their money in payment of these stocks and bonds.

Plaintiffs denied that they ever held him out as having this authority and also denied that they knew anything about these former checks or of the title to the property being in the name of W. L. Harp, until after the commencement of this case, and there was no evidence to the effect that the defendants knew of this prior to the transaction or what they did or could have relied upon such holding out, if any there was.

Plaintiffs contend that the delivery by their agent of the firm's check in payment of his personal obligation put the defendants upon inquiry as to his authority. The evidence shows that they made no such inquiry.

At the close of the plaintiffs' evidence the defendants jointly demurred thereto, which demurrer was overruled and exception allowed.

At the close of all the evidence defendants failed to renew their demurrer or to ask the court to direct the jury to return a verdict for them.

The instructions of the court to the jury fully covered the law of the case and were fair to all parties, and no objections to said instructions, or either of them are urged here, nor is any complaint made in their

brief as to the sufficiency of the evidence to sustain the allegation that the defendants, or either of them (as distinguished rrom their officers acting in their own behalf) sold W. L. Harp the stocks and bonds.

They do contend that the plaintiffs are estopped to deny the authority of W. L. Harp to issue these checks, and also that the evidence fails to negative the fact that they knew, or should have known in the exercise of ordinary diligence, that said agent had no such authority, and, therefore, the verdict was contrary to the evidence and their demurrer thereto should have been sustained.

. From a close study of the separate answers of the defendants, we are doubtful as to whether or not the defense of estoppel was presented in the pleadings, although, the trial court evidently proceeded upon the theory that it was, as it gave appropriate instructions thereon, to which neither party excepted.

Defendants, having introduced their evidence after their demurrer to the plaintiff's evidence had been overruled, and not having renewed the demurrer or moved for a directed verdict after the close of all the evidence, cannot urge, as against an adverse verdict, that the evidence was insufficient to establish a cause of action in favor of the plaintiffs. Panther Oil & Gas Co. v. Brown, 170 Okla. 210, 39 P. (2d) 150; Seidenbach's Incorporated v. Muddiman, 155 Okla. 61, 7 P. (2d) 471.

Under this condition of the record, both propositions here presented by the defendants are probably waived, but, if not, they are without merit.

We take it to be fundamental that the mere placing of an agent in charge of his principal's business does not estop the principal from denying the authority of the agent to use his money to pay the agent's personal obligations. On the question of the partnership holding him out as having such authority, there was a conflict of evidence, which was fairly submitted to the jury.

The form of these checks was sufficient notice to the defendants that W. L. Harp was using the money of the firm of Pruitt & Harp to pay his personal debt to them. The effect of such notice was to put the defendants upon inquiry to see whether they were about to accept money from one to whom it did not belong in payment of their claim. The presumption arising from the face of the checks was that this money belonged to the firm of Pruitt & Harp, and that the agent had no right to use it to pay his personal debt.

In these circumstances, if no inquiry was in fact made to dispel the presumption, but reasonable inquiry would have led to the discovery of facts which would have sustained it, the plaintiffs would be entitled to recover their money from the defendants in this action. First National Bank of El Reno v. Gillette, 52 Okla. 341, 152 P. 1084; Jenkins v. Planters' & Mechanics' Bank, 34 Okla. 607, 126 P. 757; Turner v. American National Bank, 83 Okla. 259, 201 P. 514; McCray v. Sapulpa Petroleum Co., 102 Okla. 108, 226 P. 875.

In the case of First National Bank of El Reno v. Gillette, supra, this rule is stated in the syllabus in the following language:

"Where a bank in which the funds of a corporation are deposited, and to which bank an officer of the corporation intrusted with the management of its affairs is personally indebted, knowingly accepts and pays a check drawn by such officer against the funds of the corporation in payment and satisfaction of his individual obligation, such bank is liable to the corporation for the amount of its funds so misappropriated in payment of the individual debt of such officer."

Many other jurisdictions sustain the same rule. See Ward v. City Trust Co. of New York, 192 N. Y. 61, 84 N. E. 585; Reynolds v. Title Guaranty Trust Co., 196 Mo. App. 21, 189 S. W. 33; Debaca v. Higgins, 58 Colo. 75, 143 P. 832; Martindale v. De Kay, 166 N. Y. S. 405 (affirmed 167 N. Y. S. 1113); Emerado Farmers' Elevator Co. v. Farmers' Bank of Emerado, 20 N. D. 270, 127 N. W. 522.

It is contended by the defendants that W. L. Harp represented to them that he was a member of the firm of Pruitt & Harp, and that they acted in the belief that he was a member of the firm. Such representations, if any, would not be binding upon the plaintiffs under well-known principles of law. If, however, he had been a partner at the time, the same principle applicable to other agents would apply to him. Partnerships are bound by the acts of individual members thereof on the theory of agency, and a member of a partnership cannot apply the assets of the firm in satisfaction of his own obligation any more than an ordinary agent can, and anyone receiving partnership funds in satisfaction tion of the individual partner's obligation is liable to the partnership for reimbursement if the funds were wrongfully applied. Nichols & Co. v. Thomas, 51 Okla. 212,

151 P. 847; Kleinschmidt v. White, 159 Okla. 234, 15 P. (2d) 127.

All of these issues were fully and fairly submitted to the jury and its verdict is conclusive here.

Under the facts presented by this record, we think the action of the trial court was correct, and, accordingly, its judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys J. H. Maxey, Lewis J. Bicking, and J. A. Denny in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Maxey and approved by Mr. Bicking and Mr. Denny, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and PHELPS, JJ., concur.