*392 OPINION.
Artjndell:
We are satisfied from the evidence that the leases acquired by Newman were his individual property until such time as they were turned over by him to petitioner. It is true there was an informal understanding between Newman and his associates that the leases would be turned in to a theatre company thereafter to be organized, should that course prove desirable, but the record does not disclose any formal or binding agreement to that end, and in fact it was clearly understood, should the theatre project not be carried through, that Newman would proceed in his own way to develop the leases. This being true, the company would be entitled to take the leases into its invested capital, assuming that they had a value when paid in to it by Newman, and as stock was not issued directly for the leases, they would form a part of petitioner’s paid-in surplus. At the time the leases were acquired no steps looking to the organization and incorporation of petitioner had been undertaken and it was then uncertain whether a company would ever be organized and a theatre built.
*393 The authorities are not uniform as to the relationship which a promoter bears to a corporation organized by him. The rule in Missouri, where petitioner was incorporated and where it operates, is that a promoter can not be an agent of a corporation not then in existence. Reynolds v. Title Guaranty Trust Co. (Mo. 1916), 189 S. W. 33. The United States Supreme Court has stated,, however, in the case of Dickerman v. Northern Trust Co., 176 U. S. 181, 204, that, “ The promoter is the agent of the corporation and subject to the disabilities of an ordinary agent.”
In many jurisdictions a corporation may ratify the acts of its promoters, though the rule appears to be to the contrary in Missouri. The Supreme Court of that State, in the case of Queen City Furniture & Carpet Co. v. Crawford, 30 S. W. 163, states:
Strictly speaking, there can be no ratification by a corporation of a contract formed by its promoters prior to the completion of the corporate organization. The so-called “ ratification ” by the corporation is nothing more nor less than the making of an original contract. * * * This is plainly so for the reason that there was no corporation in existence at the time these promoters made the contract in question * * *.
The several decisions examined by us are directed rather to the right of the promoter to make secret profits and ■ to the right of the corporation to secure the benefits of contracts made by promoters in its behalf, and not to a state of facts such as we have here. On the facts before us we have no hesitancy in reaching the conclusion that petitioner is entitled to include in its invested capital the value of the leases.
We are left then to determine the value of the leases at the time they were turned in to petitioner on March 1, 1919. The evidence establishes to our mind that the rental exacted for the Brady lease represented, the full rental value of the property and that the lease has no bonus value. On the contrary, we believe that the Turner and McGonegal leases had a distinct value on March 1, 1919. The three assembled leases when turned in to petitioner we have found to be of a fair market value of $140,000, and its invested capital should reflect that value. This amount should also be used as a basis for an annual deduction for depreciation.
Order of redetermmation will he entered on 15 days’ notice, under Rule 50.
Philijps dissents, on the ground that the transaction involves section 331 of the Bevenue Act of 1918.